UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x
JEFFREY P. ORLAN, *et al.*,    :
                               :
                   Plaintiffs, :
                               :   **MEMORANDUM & ORDER**
          -against-            :   10-CV-4093 (DLI)(RML)
                               :
SPONGETECH DELIVERY SYSTEMS, INC., :
SECURTIIES LITIGATION, *et al.*,   :
                               :
                   Defendants. :
------------------------------------------------------------------- x
QUANG LE, *et al.*,            :
                               :
                   Plaintiffs, :
                               :
          -against-            :   10-CV-4104 (DLI)(RML)
                               :
SPONGETECH DELIVERY SYSTEMS, INC., :
SECURTIIES LITIGATION, *et al.*,   :
                               :
                   Defendants. :
------------------------------------------------------------------- X

**DORA L. IRIZARRY, United States Chief District Judge:**

Class Plaintiffs ("Plaintiffs") were common shareholders in Spongetech Delivery Systems, Inc. ("Spongetech"), a publicly traded company that sold soap-filled sponges, *inter alia*. On March 29, 2012, the Court dismissed without prejudice the Third Claim of Plaintiffs' first consolidated amended class action complaint ("FAC") pertaining to attorney defendant Jack Halperin ("Halperin") for failure to state a claim for relief pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and for failure to comply with the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4. *See Orlan v. Spongetech Delivery Systems, Inc.*, 2012 WL 1067975 (E.D.N.Y. Mar. 29, 2012).

On May 1, 2012, Plaintiffs filed a second consolidated amended class action complaint

("SAC") in which they reasserted the same causes of action in the Third Claim against Halperin. (*See* Second Consolidated Amended Class Action Complaint with Certifications ("SAC") at ¶¶ 193-202, Dkt. Entry No. 69.) On June 1, 2012, Halperin filed a motion to dismiss the Third Claim of the SAC. (*See* Motion to Dismiss the Second Consolidated Amended Class Action Complaint ("Second Mot. to Dismiss"), Dkt. Entry No. 70, *Orlan v. Spongetech Delivery Systems, Inc. et al* ("*Orlan I*"), 10-cv-4093 (DLI)(RML).) Plaintiffs oppose. For the reasons set forth below, Halperin's motion to dismiss the Third Claim of the SAC, arising under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* ("Exchange Act"), and the rules promulgated thereunder, is granted with prejudice.

## BACKGROUND[1]

### I. The First Amended Complaint

The Court presumes familiarity with its decision dismissing the Third Claim of Plaintiffs' FAC. Nonetheless, a brief recitation of the allegations in the FAC and the Court's findings as to those allegations is necessary to understand Plaintiffs' SAC.

The FAC alleged that, from June 12, 2009 through September 29, 2009, Halperin prepared ninety-two attorney opinion letters containing materially false and misleading statements and omissions directing transfer agents to remove restrictive legends from restricted Spongetech stock and causing those shares to flood the market at artificially inflated prices. (*See* First Consolidated Amended Class Action Complaint ("FAC"), Dkt. Entry No. 46, *Le et al v. Spongetech Delivery Systems, Inc. et al*, 10-cv-4104.) According to the FAC, at the time he wrote the attorney opinion letters, Halperin knew that these Spongetech shares were unsaleable and not subject to any exemptions that would render removal of those restrictive legends proper. (*Id*. at ¶ 172.) The FAC

---

[1] The Court's discussion herein is limited to the claims filed against Halperin as he is the only defendant who moved for dismissal of the Amended Complaint.

2

further alleged that, in preparing those attorney opinion letters, Halperin facilitated the dumping of 2.5 billion shares of unregistered Spongetech stock onto the public market at artificially inflated prices which Plaintiffs purchased and sold in reliance on the representations in the attorney opinion letters. (*Id.* at ¶¶ 172, 174.)

The FAC asserted that Halperin's actions constituted violations of federal securities laws, specifically Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq*. ("Exchange Act"), and Rule 10b-5 promulgated thereunder, because Halperin's attorney opinion letters concealed from Spongetech shareholders the true value of the unregistered Spongetech stock released upon the public market. (*Id.* at ¶ 172.) In particular, the FAC alleged that Halperin: (1) issued ninety-two Rule 144[2] attorney opinion letters to transfer agents resulting in the removal of restrictive legends from over 922 million shares of unregistered Spongetech stock held by affiliated entities of Spongetech; (2) advised the transfer agent that the legends were removable because the affiliated entities had held the securities for six months or longer; (3) presented the affiliated entities as non-affiliated entities when he knew that they were indeed affiliated entities and had not held the securities for the requisite six-month period; and (4) caused these unregistered securities to be injected into the public market when he knew that the public lacked adequate current information about Spongetech's financial condition. (*Id.* at ¶¶ 101-110.)

The FAC further alleged that, as a result of Halperin's misstatements and omissions, the

---

[2] Securities and Exchange Commission Rule 144 "establishes that 'securities acquired directly or indirectly from the issuer, or from an affiliate of the issuer, in a transaction or chain of transactions not involving any public offering' are 'restricted securities.'" *Phlo Corp. v. Stevens*, 62 F. App'x 377, 382 (2d Cir. 2003) (quoting 17 C.F.R. § 230.144). "To comply with Rule 144, a person ordinarily must meet numerous requirements concerning public information, holding periods, number of shares, manner of sales, and notice to the [Securities and Exchange] Commission. However, under subsection (k) of the Rule, if a person is not now and has not been an affiliate of the issuer within the last three months, and at least two years have elapsed since the securities to be sold were last acquired from an issuer or affiliate of the issuer, then that person need not comply with the other Rule 144 requirements." *S.E.C. v. Kern*, 425, F.3d 143, 148 (2d Cir. 2005); *see* 17 C.F.R. §§ 230.144(b), 230.144(c)-(h), 230.144(k). "An affiliate of an issuer is a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such issuer." 17 C.F.R. § 230.144(a)(1).

price of Spongetech stock became inflated above its inherent value, thereby defrauding investors. (*Id*. at ¶ 174.)

## II. The Court's Dismissal of the FAC

The Court evaluated the FAC in light of the heightened pleading standards mandated by both Rule 9(b) of the Federal Rules of Civil Procedure, which provides that "circumstances constituting fraud or mistake shall be stated with particularity," and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b). Fed. R. Civ. P. 9(b). The PSLRA "insists that securities fraud complaints 'specify' each misleading statement; that they set forth the facts 'on which [a] belief' that a statement is misleading was 'formed'; and that they 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (quoting 15 U.S.C. §§ 78u-4(b)(1), (2)). Accordingly, a plaintiff asserting a claim for securities fraud pursuant to Section 10(b) of the Exchange Act and Rule 10b-5 must plead with particularity "that the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that the plaintiff's reliance on the defendant's action caused injury to the plaintiff." *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 161 (2d Cir. 2000).

The Court found that the Third Claim of the FAC failed to comply with these standards because it did not sufficiently allege materiality, scienter or loss causation. *See Orlan*, 2012 WL 1067975.

Specifically, with regard to scienter, the Court found that Plaintiffs failed to set forth, with the required degree of specificity, allegations in the FAC that Halperin had access to documentary evidence that belied the statements contained in his attorney opinion letters. *Id*. at *14. Moreover, the Court found that Plaintiffs failed to identify specifically the reports or statements containing

4

the contradictory information. *Id*.

Regarding loss causation, the Court concluded that, while Plaintiffs adequately pled transaction causation, they failed to plead that there existed a proximate causal link between the false statements contained in Halperin's attorney opinion letters and the economic harm they suffered. *Id*. at *14-15.

In dismissing the Third Claim of the FAC without prejudice, the Court afforded Plaintiffs another opportunity to plead the elements of materiality, scienter and loss causation with greater specificity in order to satisfy the heightened pleading requirements of the PSLRA and Rule 9(b) of the Federal Rules of Civil Procedure. *See Orlan*, 2012 WL 1067975.

### III. Allegations Against Halperin in the SAC

The allegations in the Third Claim of the SAC are identical to those in the Third Claim of the FAC. However, the SAC contains new allegations that fall into three general categories: (1) Halperin knew, or was reckless in not knowing, that the sale of 922 million restricted Spongetech shares was unauthorized; (2) Halperin conducted inadequate due diligence with respect to Spongetech's financial condition; and (3) Halperin's misrepresentations caused Plaintiffs to suffer economic loss. (SAC at ¶¶ 119, 125, 131, 132 and 162.)

#### A. Unauthorized Sale

Plaintiffs contend that Halperin knew that the sale and distribution of 922 million restricted Spongetech shares was unauthorized because he knew, or had access to publicly available facts, that Spongetech intended to reduce its number of common shares authorized and outstanding. (*Id*. at ¶ 119.) On July 29, 2009, Spongetech announced that it would "reduce the number of common shares that the Company has authorized to 900,000,000" and "lower its outstanding shares to approximately 500,000,000 shares." (*Id*.) The SAC adds that, on February 28, 2009, Spongetech

5

filed a Form 10-Q with the SEC reporting that it had approximately 722 million shares outstanding and issued. (*Id*.) Plaintiffs argue that Halperin's knowledge of and/or accessibility to this information should have persuaded him to not include misleading statements in his attorney opinion letters. (*Id*.)

### B. Inadequate Due Diligence

Plaintiffs further assert that Halperin's due diligence relating to researching Spongetech's financial condition was substandard. (*Id*.) The SAC contends that the Securities and Exchange Commission's ("SEC") September 29, 2009 subpoena to Spongetech's counsel seeking information on its reviews, revenues and clients should have induced Halperin to conduct additional due diligence into the facts supporting the statements contained in his attorney opinion letters. (*Id*.) Similarly, the SAC alleges that a *New York Post* article from September 17, 2009 that suggested Spongetech was engaged in securities fraud also should have compelled Halperin to cease issuing the attorney opinion letters. (*Id*.)

Moreover, in testimony before the SEC, Halperin admitted that he did not review any of Spongetech's current financial statements before making the representations contained in the ninety-two opinion letters used to remove restrictive legends on unregistered Spongetech stock. (*Id*. at ¶ 125.) Halperin further admitted that he did not investigate whether the loans that RM Enterprises International, Inc. ("RME") allegedly made to Spongetech between December 31, 2007 and March 17, 2008 actually were made before representing that the issuance of the restricted shares to RME was in consideration for those purported loans. (*Id*. at ¶¶ 124, 125.) Halperin also failed to confirm whether the purported loans had been made within the statutorily mandated one-year period prior to the issuance of the restricted shares to RME before he represented in his opinion letters that they had been made one year before. (*Id*. at ¶ 125.) Halperin conceded that

drafting between eighty and ninety attorney opinion letters for one company in a four-month period was an inordinate volume. (*Id.*) Plaintiffs allege that Halperin further admitted in his SEC testimony that he knew, or should have known, that "the entities he claimed were non-affiliates of Spongetech were in fact affiliates and, in fact, some of the Transferees shared Spongetech's office address, information which was available to" him. (*Id.*) Under SEC Rule 144, an affiliate ordinarily may not rely upon the exemption from the securities registration requirement provided by Section 4(1) of the Securities Act of 1933, 15 U.S.C. § 77d, in distributing unregistered shares of an issuer's stock. *S.E.C. v. Cavanaugh*, 155 F.3d 129, 134 (2d Cir. 1998). Therefore, Plaintiffs argue that the restricted shares Halperin recommended for release into the public market from these affiliate entities circumvented the proper registration requirements from which they had no exemption. (SAC at ¶ 129.)

### C. Economic Loss

The SAC includes additional allegations that the false and misleading statements contained in Halperin's attorney opinion letters improperly induced the sale of 922 million Spongetech shares causing "substantial dilution" of the shares being purchased by Plaintiffs. (*Id.* at ¶ 131.) The SAC continues by alleging that, if Halperin had revealed that the new shares were restricted and improperly placed in the public market, Plaintiffs would have realized that "the true value of the improperly sold shares" was "zero or near zero." (*Id.* at ¶ 132.) Halperin's misrepresentations caused Plaintiffs to purchase Spongetech stock at inflated prices thus causing them economic loss. (*Id.*) Specifically, Plaintiffs allege that Halperin's actions caused Plaintiffs to purchase shares at prices that "would have been commensurate with a pool of approximately 700 million to 900 million publicly disseminated shares rather than a pool of over 2 billion shares." (*Id.* at ¶ 162.)

## DISCUSSION

**I. Legal Standards**

As it did with Halperin's motion to dismiss the FAC, the Court treats all factual allegations in the SAC as true and draws all reasonable inferences in Plaintiffs' favor. *See Ganino*, 228 F.3d at 161. "Dismissal is proper 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 69 (2d Cir. 2001) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

Given that the SAC charges the same securities law violations as the FAC, "[t]he complaint must identify the statements plaintiff[s] assert[] were fraudulent and why, in plaintiff[s]' view they were fraudulent, specifying who made them, and where and when they were made." *In re Scholastic Corp.*, 252 F.3d at 69-70.

As noted above, a complaint alleging securities fraud under Section 10(b) of the Exchange Act is subject to the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure and the PSLRA.

**II. Plaintiffs' Section 10(b) and Rule 10b-5 Claims**

Plaintiffs' principal claims are brought pursuant to Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. To bring a cause of action pursuant to these provisions, Plaintiffs must allege with particularity that Halperin: "(1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury." *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 172 (2d Cir. 2005). Accordingly, Plaintiffs must convey through factual allegations that Halperin made materially false statements, and that he

did so with scienter. *See In re Globalstar Securities Litigation*, 2003 WL 2295163, at *5 (S.D.N.Y. Dec. 15, 2003).

A misstatement or omission is material if there is a substantial probability that a reasonable investor would have considered it significant in making investment decisions. *Ganino*, 228 F.3d at 161. "Material facts include those that affect the probable future of the company and that may affect the desire of investors to buy, sell, or hold the company's securities." *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 180 (2d Cir. 2001). "At the pleading stage, a plaintiff satisfies the materiality requirement of Rule 10b-5 by alleging a statement or omission that a reasonable investor would have considered significant in making investment decisions." *Ganino*, 228 F.3d at 162.

The requisite scienter Plaintiffs must allege is "an intent to deceive, manipulate or defraud." *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001) (internal quotation marks and citation omitted). In evaluating whether Plaintiffs have satisfied this requirement, "the court must read the complaint *in toto* and most favorably to plaintiff." *In re Regeneron Pharmaceuticals, Inc. Securities Litigation*, 2005 WL 225288, at *24 (S.D.N.Y. 2005) (internal quotation marks and citation omitted). However, Plaintiffs must allege facts that give rise "to a strong inference that [defendants] acted with the required state of mind, a weak yet reasonable inference of scienter" will not suffice. 15 U.S.C. § 78-u-4(b)(2); *In re JP Morgan Chase Securities Litigation*, 363 F. Supp. 2d 595, 618 (S.D.N.Y. 2005). Plaintiffs can establish scienter in either of two ways: "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious behavior or recklessness." *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000) (internal quotation marks and citation omitted).

As explained above, the Court dismissed the FAC because it failed to establish materiality, scienter and loss causation for Halperin's alleged misstatements and omissions in his attorney

opinion letters. Halperin asserts that none of the new factual allegations in the SAC regarding the unauthorized sale of 922 million restricted Spongetech shares, the inadequate due diligence related to Spongetech's current financial condition and the economic loss Plaintiffs suffered remedies the deficiencies that led the Court to dismiss the FAC.

### A. Materiality

Halperin argues that the SAC does not allege that Plaintiffs considered his opinion letters when considering whether to invest in Spongetech. (Defendant's Memorandum of Law in Support of Motion to Dismiss ("Def. Mem. of Law") at 10, Dkt. Entry No. 70-4, *Orlan I*, 10-cv-4093.) Halperin correctly notes that Plaintiffs merely speculate that, if Halperin revealed the true nature of the shares' status in his attorney opinion letters, then Plaintiffs would not have purchased any stock or suffered any losses. (*Id.*) Furthermore, Halperin contends that "Plaintiffs were not even aware of [his] opinion letters" in order to consider them at the time of their stock purchases. (*Id.*)

Relying on two decisions issued by the United States District Court for the Southern District of New York ("Southern District") in 2010 and 2012, respectively, Plaintiffs counter that "[t]he fact that the alleged misrepresentations were made to a transfer agent rather than to the public, …, does not foreclose their being material." *S.E.C. v. Czarnik*, 2010 WL 4860678, at *5 (S.D.N.Y. Nov. 29, 2010); *see S.E.C. v. Greenstone Holdings, Inc.*, 2012 WL 1038570 (S.D.N.Y. Mar. 28, 2012); Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss ("Opp. Mem.") at 12-13, Dkt. Entry No. 73, *Orlan I*, 10-cv-4093.

*Czarnik* held that "investor reliance is not a necessary predicate for a finding of materiality." *Czarnik*, 2010 WL 4860678, *5. *Czarnik* further held that "a misstatement made in any phase of the selling transaction can be material if a reasonable investor would have considered the defendant's alleged misrepresentations important, even if the statement is not made directly to the

10

investor." *Id*. *Greenstone Holdings* held that a private written communication between an attorney and a transfer agent does not foreclose a statement's materiality insofar as the misrepresentations contained in such a communication "may be considered important by a reasonable investor." *Greenstone Holdings*, 2012 WL 1038570 at *5.

However, as Halperin correctly notes in his reply papers, the case law above does not include the heightened pleading requirements mandated by private securities actions under Section 10(b). (Defendant's Reply Memorandum of Law ("Reply") at 3-5, Dkt. Entry No. 75, *Orlan I*, 10-cv-4093.) Indeed, reliance is the critical element in private actions under Rule 10b-5. *Pacific Investment Management Co. LLC v. Mayer Brown LLP*, 603 F.3d 144, 156 (2d Cir. 2010). Similarly, in *Stoneridge Investment Partners, LLC v. Scientific Atlanta*, the Supreme Court held that a Section 10(b) private right of action does not reach a defendant when the investors did not rely upon that defendant's statements or representations. 552 U.S. 148, 152 (2008). Here, Plaintiffs failed to plead sufficiently in the SAC that they relied upon Halperin's statements in the attorney opinion letters when purchasing or selling Spongetech stock. Thus, Plaintiffs failed to establish the materiality element of their Section 10(b)/Rule 10b-5 claim. Accordingly, Halperin's motion to dismiss the Third Claim of the SAC is granted with prejudice.

The Court simply may end its Section 10(b)/Rule 10b-5 analysis since Plaintiffs failed to establish materiality. *Kalnit*, 264 F.3d at 144 (upon finding that plaintiff failed to plead scienter adequately, the court ruled that it was unnecessary to reach defendant's arguments alleging deficiencies in the manner in which plaintiff pleaded materiality or reliance). However, the Court will continue with the scienter and loss causation prongs to exhaust the analysis fully.

### B. Scienter

As the Court stated in its March 29, 2012 Order, the crux of the scienter issue here is whether Halperin acted recklessly in writing his attorney opinion letters. *See Orlan*, 2012 WL 1067975 at *14. Since Plaintiffs failed to demonstrate that Halperin had a motive to defraud the shareholders, they "must produce a stronger inference of recklessness." *Kalnit*, 264 F.3d at 143; *see Orlan*, 2012 WL 1067975 at *13.

Recklessness is "at the least, . . . an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Novak*, 216 F. 3d at 308 (internal quotation marks and citation omitted). Indeed, an inference of recklessness "may arise where the complaint sufficiently alleges that the defendants . . . knew facts or had access to information suggesting that their public statements were not accurate" or "failed to check information they had a duty to monitor." *Id*. at 311. "[T]o qualify as a strong inference, the inference of scienter must be more than merely reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (internal quotation marks and citation omitted). Thus, "'to determine whether a complaint's scienter allegations can survive threshold inspection for sufficiency, a court governed by'" the PSLRA "'must engage in a comparative evaluation; *it must consider, not only inferences urged by the plaintiff, ... but also competing inferences rationally drawn from the facts alleged*. An inference of fraudulent intent may be plausible, yet less cogent than other, nonculpable explanations for the defendant's conduct.'" *South Cherry Street, LLC v. Hennessee Group LLC*, 573 F.3d 98, 111 (2d Cir. 2009) (emphases included) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007)).

Halperin contends that Plaintiffs failed to establish reckless conduct in the following three respects: (1) Halperin's alleged admissions to inadequate due diligence in his testimony before the SEC were false and taken out of context; (2) Halperin reasonably relied in good faith upon the representations of Spongetech and its corporate officers in preparing the attorney opinion letters; and (3) Halperin was not under a duty to anticipate materially adverse future events when preparing the opinion letters. (Def. Mem. of Law at 12-20.)

Plaintiffs counter that Halperin's SEC testimony was sufficiently particularized in the SAC such that it demonstrated his "reckless abandonment of his important duties." (Opp. Mem. at 14-16.) In continued reliance on *Czarnik* and *Greenstone Holdings*, Plaintiffs further argue that Halperin's failure to review the information supporting the representations in his attorney opinion letters constituted reckless conduct. (*Id*. at 16-17.)

As with the materiality analysis, the holdings in *Czarnik* and *Greenstone Holdings* are inapplicable to an analysis of scienter under the heightened pleading requirements of the PSLRA. "Although the Second Circuit has not directly addressed the issue, courts in this Circuit have declined to extend the Supreme Court's interpretation of the PSLRA's strong inference standard in *Tellabs* to [SEC] enforcement actions." *Czarnik*, 2010 WL 4860678, at n. 4 (internal quotation marks and citations omitted). Therefore, the lesser standard for recklessness used in the *Czarnik* and *Greenstone Holdings* decisions has no bearing on whether Plaintiffs demonstrated scienter in the instant matter.

In its March 29, 2012 Order, the Court provided Plaintiffs with specific guidance on how to plead scienter with greater specificity by correlating Halperin's attorney opinion letters with conflicting statements that were publicly available at the time he drafted those letters. *Orlan*, 2012 WL 1067975, n. 6. Plaintiffs failed to heed this guidance. Plaintiffs' enumeration of admissions

13

Halperin made during his SEC testimony did not indicate how or where it contradicted statements he made in his attorney opinion letters. (SAC at ¶ 125.) Furthermore, the admissions were not pled with particularity as Plaintiffs failed to attach the actual SEC record of testimony or specific citations thereto. *See Marcus v. Frome*, 275 F. Supp. 2d 496, 502-03 (S.D.N.Y. 2003) (court found that plaintiff failed to satisfy scienter requirement when it alleged that the chief executive officer of a corporation and the attorney preparing the opinion letter regarding the purchase of its shares had access to documents informing them that the representations in the letter were false; however, plaintiffs failed to cite to any particular documents contradicting the representations contained in the letter). Here, Plaintiffs also failed to provide any reference to the specific loan documents of which they allege that Halperin was aware or to plead with particularity the portions of those loan documents that exhibited some indicia of fraud. (SAC at ¶¶ 124, 125.) Therefore, Halperin's alleged admissions before the SEC do not rise to the level of recklessness necessary to establish scienter. Accordingly, Halperin's motion to dismiss the Third Claim of the SAC is granted with prejudice.

### C. Loss Causation

"It is long settled that a securities-fraud plaintiff 'must prove both transaction and loss causation.'" *Lentell*, 396 F.3d at 172 (quoting *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994)). As noted above, the Court already held that Plaintiffs adequately pled transaction causation in its March 29, 2012 Order, therefore, it moves to a loss causation analysis. *Orlan*, 2012 WL 1067975, at *15.

Loss causation "is the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." *Lentell*, 396 F.3d at 172 (internal quotation marks and citation omitted). The PSLRA specifically codified this common law requirement: "In any private action

arising under this chapter, the plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4). "Thus to establish loss causation, 'a plaintiff must allege … that the *subject* of the fraudulent statement or omission was the cause of the actual loss suffered,' that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." *Lentell*, 396 F.3d at 173 (quoting *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 95 (2d Cir. 2001) (emphasis included)). "The loss causation inquiry typically examines how directly the subject of the fraudulent statement caused the loss, and whether the resulting loss was a foreseeable outcome of the fraudulent statement." *Suez Equity*, 250 F.3d at 96. "Related factors include whether intervening causes are present." *Id*. "In the end, whether loss causation has been demonstrated presents a public policy question, the resolution of which is predicated upon notions of equity because it establishes who, if anyone, along the causal chain should be liable for the plaintiffs' losses." *Id*. Ultimately, however, "[l]oss causation is a fact-based inquiry" and it is insufficient "to allege that a defendant's misrepresentations and omissions induced a 'purchase-time value disparity' between the price paid for a security and its 'true "investment quality."'" *Lentell*, 396 F.3d at 174 (quoting *Emergent Capital Investment Management, LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 198 (2d Cir. 2003)).

In support of their loss causation argument, Plaintiffs allege that the misstatements contained in Halperin's attorney opinion letters caused "hundreds of thousands" of unregistered and previously restricted Spongetech shares to enter the public market at prices incommensurate with the actual volume of two billion shares available for purchase and sale. (SAC at ¶ 162.) The SAC further alleges that Plaintiffs purchased these shares at prices consistent with the availability of 700 million to 900 billion shares in the market as previously advertised. (*Id*.) Ultimately, the

15

SAC contends that Halperin's false statements caused the value of Spongetech's stock to become substantially diluted and valueless. (*Id.* at ¶¶ 131, 132; Opp. Mem. at 18.)

Halperin counters that Plaintiffs' failure to demonstrate their reliance on the opinion letters in purchasing Spongetech securities forecloses their loss causation argument. (Def. Mem. of Law at 20.) Halperin also correctly notes that revelation of the Spongetech securities fraud through the series of *New York Post* articles published between September 17, 2009 and September 28, 2009 constitutes an intervening event responsible for the decline in the price of the shares. (Reply at 9-10; *see* SAC at ¶¶ 143-151.) Notwithstanding Plaintiffs' contention that the loss they suffered was foreseeable by Halperin and that the loss was caused by the materialization of the concealed risk of stock dilution, Halperin's relationship to Plaintiffs' investment loss and the misstated information was not sufficiently direct to warrant liability for the securities fraud. If a defendant's connection to the loss and the risk concealment is attenuated, "or if the plaintiff fails to demonstrate a causal connection between the content of the alleged misstatements or omissions and the harm actually suffered, a fraud claim will not lie." *Lentell*, 396 F.3d at 174 (internal quotation marks and citations omitted).

Where, as here, "substantial indicia of the risk that materialized are unambiguously apparent on the face of the disclosures alleged to conceal the very same risk, a plaintiff must allege (i) facts sufficient to support an inference that it was defendant's fraud—rather than other salient factors—that proximately caused plaintiff's loss; or (ii) facts sufficient to apportion the losses between the disclosed and concealed portions of the risk that ultimately destroyed the investment." *Id.* at 177. Plaintiffs have done neither, and thus offer no factual basis to support the allegation that the misrepresentations and omissions in the attorney opinion letters caused the losses flowing from the well publicized SEC mandate that Spongetech redo its financial statements. (SAC at ¶¶

143-151.) The origins of this mandate stem from perceived improprieties committed by the company's auditor and the alleged forgery of certain attorney opinion letters, *inter alia*. (*Id.* at ¶¶ 119, 143-151.) Halperin's lack of connection to the preparation of Spongetech financial statements renders his role in causing Plaintiffs' economic suffering attenuated. Similarly, the use of some of his attorney opinion letters by Spongetech corporate officers to remove restrictive legends from shares unregistered and otherwise restricted shares for transfer to affiliated entities did not directly involve Halperin. Accordingly, Plaintiffs failed to adequately plead loss causation and Halperin's motion to dismiss the Third Claim of the SAC is granted with prejudice.

### III. Manipulation and Scheme Liability

Plaintiffs further contend that Halperin and Spongetech corporate officers acted in concert with one another and "directly participated in the scheme" to prepare and sign attorney opinion letters containing false information causing 2.5 billion unregistered shares of Spongetech to flood the market at artificially inflated prices. (SAC at ¶ 196; Opp. Mem. at 18.) However, the Supreme Court's decision in *Stoneridge* foreclosed Plaintiffs' theory of scheme liability. In *Stoneridge*, plaintiffs sought to hold two companies liable for their participation in fraudulent transactions that allowed the issuer of securities to overstate its revenue. *Stoneridge*, 552 U.S. at 153-55. Notwithstanding the deceptive nature of the defendants' conduct, which enabled the issuer to conceal the misrepresentations in its financial statements, the Supreme Court found that the critical element of reliance was absent. *Id.* at 159. It explained that

> [Defendants'] deceptive acts were not communicated to the public. No member of the investing public had knowledge, either actual or presumed, of [defendants'] deceptive acts during the relevant times. [Plaintiffs], as a result, cannot show reliance upon any of [defendants'] actions except in an indirect chain that we find too remote for liability.

*Id.*

Like the defendants in *Stoneridge*, Halperin is alleged to have facilitated the dilution of Spongetech shares and the inflation of its stock price in the public market by concealing the true state of its financial condition from investors. However, Halperin correctly notes that Plaintiffs failed to allege that they had knowledge of the misrepresentations in his attorney opinion letters because those letters were never communicated to Plaintiffs. (Def. Mem. of Law at 18.) Thus, *Stoneridge* forecloses Plaintiffs' claim of scheme liability and that claim is hereby dismissed.

## CONCLUSION

For the reasons set forth above, Halperin's motion to dismiss the Third Claim, arising under Section 10(b) of the Exchange Act and the rules promulgated thereunder, is granted with prejudice.

SO ORDERED.

Dated: Brooklyn, New York
       March 24, 2017

/s/
DORA L. IRIZARRY
Chief Judge